# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ERIKA SANTOS,**

          **Plaintiff,**

**v.**                               **Case No: 6:25-cv-2167-PGB-LHP**

**RONALD HOWSE, EDGAR FIGUEROA, WINSTON SCOTT, BRUCE DEARDOFF, KRISTINE ZONKA, and DARLA FERGUSON,**

          **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendant Darla Ferguson's ("**Ferguson**") Motion to Dismiss Count III of Plaintiff's Complaint (Doc. 16 (the "**Motion**")). Plaintiff Erika Santos ("**Plaintiff**") filed a response in opposition. (Doc. 21 (the "**Response**")). With the Court's leave, Ferguson filed a reply. (Doc. 25 (the "**Reply**"); *see also* Doc. 24). Ferguson also filed a Notice of Supplemental Authority. (Doc. 28). Upon consideration, the Motion is due to be denied.

1

## I.     BACKGROUND[1]

This action concerns Ferguson's termination of Plaintiff's employment at the Eastern Florida State College ("**EFSC**") due to posts shared by Plaintiff (the "**Posts**") on her personal Facebook page. (Doc. 1, ¶ 1).

According to the Complaint, "EFSC is a public institution of higher education organized under the laws of Florida with four campuses located in Brevard County." (*Id.* ¶ 8). Between July 2019 and January 2023, Plaintiff "worked for EFSC in various clerical accounting positions." (*Id.* ¶ 7). On February 10, 2025, Plaintiff was rehired by EFSC "as a Grant Accountant in its Accounting Office on the Cocoa Campus," responsible for "provid[ing] accounting services in support of post-award grant compliance." (*Id.*).

On September 10, 2025, Charlie Kirk ("**Kirk**"), a prominent conservative activist, was publicly shot and killed during a debate held on a college campus. (*Id.* ¶ 12). His death received national media coverage, sparking public debate "over how he should be remembered, given his prior controversial statements on topics including empathy, women's rights, and mass shootings." (*Id.*). That same day, Plaintiff joined the public debate and shared "on her personal, non-public Facebook page a post originally posted by the page Worldstar Hip Hop" that reported the shooting. (*Id.* ¶ 13). Alongside the shared post, Plaintiff "included a quote attributed to [Kirk]: 'If I had a 10-year-old daughter who was sexually

---

[1]     This account of the facts comes from Plaintiff's Complaint. (Doc. 1 (the "**Complaint**")). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

assaulted and became pregnant as a result, I would force her to carry the pregnancy to term.'" (*Id.* ¶ 15). Plaintiff then added the comment: "Imma just shut up now. . . [.]" (*Id.*).

Subsequently, Plaintiff engaged in a comment exchange with a coworker concerning Kirk's death. (*Id.* ¶¶ 16–19). During the exchange, Plaintiff responded to her coworker's remarks by stating, among other things, "ayyyyyyy. Coming in HOT with this one," and later commented, "[i]t really is some crazy irony. It's very telling about the vibes one puts out into the world." (*Id.* ¶¶ 17–19). Furthermore, later in the day, Plaintiff also shared a Facebook post from the page "Feminist News" to her personal, non-public Facebook page stating, "Kirk is neither a martyr nor a hero; he is a cause." (*Id.* ¶ 22). Plaintiff added the comment "[t]en toes down [shrug emoji] feel free to delete me [okay hand emoji]." (*Id.* ¶ 21). Additionally, Plaintiff "exchanged comments with a childhood acquaintance, during which she clarified she did not condone the killing or wish harm on [Kirk] or anyone else." (*Id.* ¶ 25).

On or about September 18, 2025, EFSC's Human Resources department received an anonymous letter addressed to Ferguson containing screenshots of Plaintiff's Posts. (*Id.* ¶ 27). Following receipt of the letter and screenshots, Ferguson directed Sgt. Ricky Carswell ("**Carswell**") of EFSC's security department to investigate the matter. (*Id.* ¶ 28). In the memorandum summarizing his investigation, Carswell confirmed that he was unable to view Plaintiff's Posts because they had either been deleted or were visible only to approved friends. (*Id.*

¶ 29). Carswell ultimately concluded that Plaintiff's Posts and comments were "disgraceful in that they give the appearance of condoning the assassination of Charlie Kirk," but he made "no findings related to disruption" of EFSC's operations. (*Id.* ¶ 30; Doc. 21, p. 5).

Following the investigation, on or about October 15, 2025, Ferguson issued an "Outcome of Investigation" memorandum. (Doc. 1, ¶ 31; *see also* Doc. 1-4). The following day, "Ferguson issued a termination letter declaring that [Plaintiff's] comments 'appeared to condone if not celebrate the death of [Kirk]' and were 'repugnant, divisive, political in nature, and undermined public confidence in EFSC's ability to provide an educational environment free from discrimination based on political affiliation.'" (Doc. 1, ¶ 32; *see also* Doc. 1-5).

Ultimately, on November 12, 2025, Plaintiff initiated the instant action. (*See generally* Doc. 1). Plaintiff's Complaint asserts a 42 U.S.C. § 1983 claim against Defendants for deprivation of rights secured by the U.S. Constitution, alleging three causes of action: (I) First Amendment retaliation against members of the EFSC Board of Trustees and Ferguson in their individual capacities; (II) First Amendment content and viewpoint discrimination against members of EFSC and Ferguson in their official capacities; and (III) First Amendment content and viewpoint discrimination against Ferguson in her individual capacity. (*Id.* ¶¶ 45–64). Ferguson, in her individual capacity, now moves to dismiss Count III of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted as a matter of law. (Doc.

16, p. 1). Plaintiff filed a Response in opposition. (Doc. 21). With the Court's leave, Ferguson filed a Reply, and the matter is now ripe for review. (*See* Docs. 24, 25).

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.   DISCUSSION

In the instant Motion, Ferguson moves to dismiss Count III of Plaintiff's Complaint, contending that she is entitled to qualified immunity for the claim raised against her in her individual capacity. (Doc. 16, p. 2). Viewing the complaint in the light most favorable to Plaintiff, the Motion is due to be denied. *See Iqbal*, 556 U.S. at 678–79.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). A government official acts within his discretionary authority when he "perform[s] a legitimate job-related function . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not

appropriate." *Lee*, 284 F.3d at 1194. To do so, the plaintiff must make a two-part showing. First, the plaintiff must demonstrate that the facts of the case, if proven to be true, would make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). Second, the plaintiff must demonstrate that the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

Courts are not required to conduct qualified immunity analysis in any particular order. *Festa v. Santa Rosa Cnty.*, 413 F. App'x 182, 185 (11th Cir. 2011) (per curiam).[2] Rather, district courts are "'permitted to exercise their sound discretion in deciding which prong of the inquiry to address first." *Id.* (quoting *Pearson*, 555 U.S. at 236). The Court will first address whether Ferguson has established that she was acting within her discretionary authority.

### A.    Discretionary Authority

To determine whether an employee was acting within their discretionary authority for the purposes of qualified immunity, courts in the Eleventh Circuit "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within

---

[2]    "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

his power to utilize." *Holloman*, 370 F.3d at 1265. The Court finds that Ferguson has established that she was acting within her discretionary authority.

In the Motion, Ferguson contends that "it is without dispute—based on [Plaintiff's] allegations alone—that Ferguson acted within her discretionary authority at all relevant times." (Doc. 16, p. 13). Consequently, Plaintiff argues that Ferguson failed to prove that she was "performing a legitimate job-related function through means within her authority," because she relies solely "on the Complaint's allegation that she was acting under the color of [state] law." (Doc. 21, p. 10). However, based on the facts in the record, it appears to the Court that Ferguson was clearly pursuing a job-related goal. Plaintiff states that "[a]t all relevant times, Defendants were state actors exercising authority under Florida statutes, regulations, and institutional policies." (Doc. 1, ¶ 10). The investigation of an anonymous complaint and the subsequent suspension and termination of an employee fall squarely within the core, legitimate, job-related functions of a human resource administrator. *See McAllister v. Lee Cnty.*, No. 2:14-CV-403-FTM-29CM, 2015 WL 2095197, at *2 (M.D. Fla. May 5, 2015) (explaining that the County's Human Resource Director was indisputably acting within the scope of their official duties when terminating Plaintiff's employment.).

Accordingly, the Court finds that Ferguson has met her initial burden of showing she was acting within her discretionary authority because she has established that, but for the alleged constitutional violation, terminating an employee would fall within her legitimate job description. *Id.*

### B.   Constitutional Violation

Because Ferguson has established the discretionary authority prong, the burden shifts to Plaintiff to demonstrate that Ferguson is not entitled to dismissal of Count III on qualified immunity grounds. *See Lee*, 284 F.3d at 1194 ("Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."). As such, Plaintiff must demonstrate that (1) the facts of the case, if proven true, would constitute a constitutional violation and (2) that the constitutional right being violated was "clearly established" at the time of the alleged misconduct. P*earson*, 555 U.S. at 232.

For purposes of the Motion only, Ferguson does not dispute that the Complaint sufficiently alleges a violation of Plaintiff's First Amendment rights. (Doc. 16, p. 14). Accordingly, because Ferguson does not dispute this prong of the qualified immunity analysis, the Court assumes, without deciding, that Plaintiff has plausibly alleged a constitutional violation.

### C.   "Clearly Established" Law

In the Eleventh Circuit, a right can be "clearly established" in one of three ways. *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). Plaintiff must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th

9

Cir. 2009)). "Although options two and three may suffice," the Supreme Court has warned not to "define clearly established law at a high level of generality." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quotation marks omitted)).

### i.    *Pickering* Balance Test

"Acting as an employer, the government is afforded broad discretion in its employment decisions." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (per curiam). But the First Amendment affords public employees protection for certain kinds of speech. *Id.; see also Rankin v. McPherson*, 483 U.S. 378, 383–85 (1987). "[F]or a government employee's speech to have First Amendment protection, the employee must have (1) spoken as a citizen and (2) addressed matters of public concern."[3] *Boyce*, 510 F.3d at 1341. If that threshold is met, courts then balance the employee's interests in commenting upon "matters of public concern" against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin*, 483 U.S. at 388 (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 568, 568 (1968)).

In striking that balance, courts consider "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made." *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000) (quoting

---

[3]   Whether speech addresses a matter of public concern depends on the "content, form, and context of a given statement." *Rankin*, 483 U.S. at 384–85 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

*Bryson v. City of Waycross*, 888 F.2d 1562, 1567 (11th Cir. 1989)). Relevant considerations include whether the speech impaired discipline or harmony among coworkers, damaged close working relationships requiring personal loyalty and confidence, impeded the employee's duties, or interfered with the regular operation of the employer. *Rankin*, 483 U.S. at 388 (citing *Pickering*, 391 U.S. at 573).

Here, Ferguson does not argue that Plaintiff's Posts addressed a matter of public concern; instead, Ferguson focuses on the appropriate weight to give Plaintiff's Posts when balancing Plaintiff's and EFSC's interests. (Doc. 16, p. 16 n.7). However, viewing the Complaint in the light most favorable to Plaintiff, the *Pickering* balance test also plausibly favors Plaintiff at this stage. Plaintiff occupied a clerical accounting position rather than a confidential, policymaking, or public-facing role. (Doc. 1, ¶ 7). Further, Plaintiff alleges that her Posts appeared only on a personal, non-public Facebook page visible to only her approved friends. (*Id*. ¶¶ 13, 21–22, 29). Although Carswell, in his memorandum, concluded the Posts were "disgraceful," Plaintiff alleges that the memorandum did not include any discussion of "potential threats to or disruption of" EFSC's operations. (*Id*. ¶ 30). Moreover, there is nothing to suggest that Plaintiff's Posts led to the impairment of discipline, interference with Plaintiff's duties at EFSC, or harm to close working relationships. While Ferguson asserts that Plaintiff's comments undermined public confidence in EFSC and its educational mission, those asserted interests rely on factual issues that cannot be resolved on a Rule 12(b)(6) motion. (Doc. 1-5,

p. 2; Doc. 16, pp. 17–18). Accordingly, at this juncture, Plaintiff has plausibly alleged that the *Pickering* balance test weighs in her favor. Nevertheless, this conclusion does not foreclose Ferguson from developing evidence of actual or reasonably anticipated disruption and renewing the *Pickering* argument later, with a more developed factual record.

### ii.      Similarities with *Rankin*

Additionally, in the Motion, Ferguson contends that there was no clearly established law and that "a reasonable official in the position of Ferguson could consider [Plaintiff's] comments and determine that terminating [Plaintiff] would be permissible under Eleventh Circuit precedent." (Doc. 16, p. 14). In her Response, Plaintiff cites *Rankin* as "one of the several materially similar cases that provide fair notice that [Ferguson's] actions violated clearly established law."[4] (Doc. 21, p. 11). In the Reply, Ferguson contends that "*Rankin* did not provide Ferguson with fair notice that her actions violated [Plaintiff's] rights" and that it is not materially similar to the instant case because, "the speech at issue in *Rankin* was made in a private setting," and "before terminating the employee in *Rankin*,

---

[4]    In the Motion and the Response, both parties cite to *Brown v. Young* as an example of Court's deferring ruling on qualified immunity at the motion to dismiss stage. (Doc. 16, p. 18 (citing *Brown v. Young*, 812 F. Supp. 3d 1217 (N.D. Fla. 2025)); Doc. 21, p. 14 (same)). The Court notes that, although *Brown v. Young* is not binding authority, its reasoning is highly persuasive. Given the similarities between *Brown* and this case, the *Brown* court's conclusion that *Rankin* provided fair warning for purposes of the clearly established inquiry further supports this Court's analysis. *See id.* at 1222 ("And here, as Plaintiff points out, it is clearly established that the State cannot fire an employee—even an at-will employee—solely in retaliation for the employee's speech as a citizen on a matter of public concern." (citing *Rankin*, 483 U.S. at 383–84)).

the employer did not even consider the possibility of whether the employee's speech would interfere with or disrupt the workplace." (Doc. 25, pp. 2–3).

In *Rankin*, a clerical employee was terminated after privately remarking to a coworker, following an attempt on the President's life, that she hoped the assailant would succeed if another attempt were made. *Rankin*, 483 U.S. at 381–82. The Supreme Court held that the remark addressed a matter of public concern and, after applying *Pickering*, concluded that the employee's speech interest outweighed the employer's interests because the statement was made privately, did not interfere with workplace functioning, and the employee occupied no confidential, policymaking, or public-contact role. *Id*. at 386–92.

However, the Eleventh Circuit has explained that, because reasonable officials may disagree about how that balance applies, "only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated clearly established federal rights." *Stanley*, 219 F.3d at 1298. Qualified immunity is unavailable only when the *Pickering* balance inevitably leads to the conclusion that the adverse action was unconstitutional. *Dartland v. Metropolitan Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989). Nevertheless, taking the allegations in Plaintiff's favor, this is plausibly one of those rare cases.

In *Rankin*, the Supreme Court established the clear principle that a public employer may not discharge a government employee solely for expressing political commentary as a citizen on a matter of public concern. *Rankin*, 483 U.S. at 391

13

n.17. As alleged in the Complaint, Plaintiff was a non-policymaking grant accountant with no public-contact function; she spoke on a matter of public concern through a personal, non-public Facebook account; and there was no identifiable disruption to EFSC's operations or Plaintiff's job performance. (Doc. 1, ¶¶ 13, 30, 37–38). Those allegations closely track the considerations the Supreme Court identified in *Rankin*. 483 U.S. at 391–92. Although Plaintiff's speech appeared on a private Facebook page rather than in a private workplace conversation, the Complaint alleges that the posts were visible only to approved friends and that EFSC learned of them through an anonymous letter. (Doc. 1, ¶¶ 26–29). Despite Ferguson's argument that speech reaching 804 Facebook friends is not analogous to the private speech protected in *Rankin*, this is a factual dispute regarding the degree of disruption and interference with EFSC's interests, which is better addressed at a later stage in the litigation, such as summary judgment. (Doc. 25, pp. 2–3).

Furthermore, Ferguson contends that the offensive nature of Plaintiff's Posts impede EFSC's asserted interest in preserving public confidence in a safer learning and working environment. (Doc. 16, p. 8). While those asserted interests may ultimately distinguish this case from *Rankin*, at the motion to dismiss stage, the Complaint alleges no facts showing actual or reasonably anticipated disruption, interference with Plaintiff's job performance, or harm to close working relationships. *See Rankin*, 483 U.S. at 388. Therefore, Ferguson's arguments

14

primarily depend on factual inferences that the Court cannot draw against Plaintiff on a Rule 12(b)(6) motion.

Ultimately, accepting the Complaint's allegations and the governing Eleventh Circuit principles, *Rankin* gave Ferguson fair warning that terminating an employee for speaking as a private citizen on a matter of public concern, without allegations of actual or reasonably anticipated operational disruption, could violate the First Amendment. Plaintiff has therefore plausibly alleged that Ferguson's actions were prohibited by clearly established law, and this Court cannot conclude that Ferguson is entitled to qualified immunity at this stage.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Darla Ferguson's Motion to Dismiss Count III of Plaintiff's Complaint (Doc. 16) is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on August 4, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

15